```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
                          CAMDEN VICINAGE
```

| | |
|---|---|
| JUDITH ROWAND,<br><br>      Plaintiff,<br><br>      v.<br><br>COMMISSIONER, SOCIAL SECURITY<br>ADMINISTRATION,<br><br>      Defendant. | Civil No. 19-04693 (RMB)<br><br>**MEMORANDUM OPINION & ORDER** |

**BUMB**, United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff Judith Rowand from a denial of social security disability benefits.

For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge ("ALJ") and remands for proceedings consistent with this Memorandum Opinion and Order's reasoning.

I. **STANDARD OF REVIEW**

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere

scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a

specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. Id. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" Id. §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" Smith, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work."2 *202 Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." Id. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot,

3

> the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

Hess v. Comm'r Soc. Sec., 931 F.3d 198, 201–02 (3d Cir. 2019).

**II.   FACTS**

The Court recites only the facts that are necessary to its determination on appeal, which is narrow.

Plaintiff, who was under 50 years old at the alleged onset date, claims disability, in part, based on diagnoses of mental disabilities including attention deficit hyperactivity disorder and generalized anxiety disorder.

In support of her claim in these regards, Plaintiff provided treatment records from treating physicians Jessica Horvath-Matthews, M.D. (A.R. at 305-309) and John F. Robertson, M.D. (A.R. at 309-326), as well as treatment notes (A.R. at 406-and a "General Medical Report" completed by Dr. Richard Shaw, M.D. (A.R. at 327-330).  Plaintiff also underwent two mental status examinations during the benefit application process: the first in September 2014 at the request of the

Social Security Commissioner, conducted by Dr. Lawrence Mintzer, Ph.D. (A.R. at 333-337); the second in September 2015 at the request of Plaintiff's counsel, conducted by Dr. Barry Kardos, Ph.D. (A.R. at 355-364).

Dr. Mintzer diagnosed Plaintiff with "unspecified anxiety disorder", ADHD, and "specific learning disorder with impairment in reading", and assessed Plaintiff's limitations as "moderate to severe in degree" and her prognosis as "guarded." (A.R. at 336). Dr. Kardos diagnosed Plaintiff with severe ADHD, dyslexia, chronic pain syndrome, a mood disorder "partially related to medical conditions", and a sleep disorder. (A.R. at 361) He assessed Plaintiff's prognosis as "poor" and noted that "[h]er conditions prevent her from partaking in active and successful employment." (A.R. at 361) He also assessed that Plaintiff "would have trouble working independently or with others. Learning new tasks would be difficult for her. She would not be able to maintain a regular schedule. She would have difficulty with supervisors and other workers." (A.R. at 361)

### III. **ALJ'S DETERMINATION**

The ALJ found Plaintiff not disabled. At Step Two of the five-step sequential analysis, the ALJ concluded that Plaintiff had "severe impairments" of, *inter alia*, ADHD and anxiety

5

disorder. (A.R. at 16)  At Step Three, the ALJ determined that "[w]ith regard to concentrating, persisting, or maintaining pace", Plaintiff had "marked limitation." (A.R. at 18)  At Step Four of the five-step sequential analysis, the ALJ concluded that Plaintiff had "the residual function capacity to perform light work as defined in 20 CFR 404.1567(b). (A.R. at 19)  The ALJ did make certain accommodations for Plaintiff's asserted impairments, including that she "is limited to simple routine work, work in a low stress job defined as having only occasional decision making and only occasional changes in the work setting"; that she "can have only occasional interaction with coworkers, with no tandem tasks or teamwork, and dealing with things rather than people"; and that she "can have no more than occasional interaction with supervisors and only occasional interaction with the public." (A.R. at 19)  The RFC also included an accommodation for being off task "not . . . more than 9% of the work period"; notably, this was specified in the context of an at-will "sit/stand option" requirement. (A.R. at 19)

The ALJ gave "little weight" to Dr. Mintzer's assessment that Plaintiff's mental limitations are "moderate to severe in degree" (A.R. at 336), explaining that "the language is excessively vague", but went on to note that "moderate to severe mental limitations are generally consistent with the positive

findings on the mental status exam and the record as a whole." (A.R. at 21)  The ALJ also gave "little weight" to Dr. Kardos' written opinion on Plaintiff's mental limitations, referring to the report's language as "vague" and "conclusory" and explaining that "the extent of limitation opined is inconsistent with the minimal treatment history for psychiatric disorders". (A.R. at 26)

The ALJ concluded that Plaintiff could perform past relevant work as a mail clerk, and that such work would not require performance of work-related activities precluded by her residual functional capacity. (A.R. at 27)

The ALJ went on to make alternative findings for step five of the analysis. (A.R. at 27-28)  The ALJ determined that Plaintiff could perform the occupations of textile laundry folder, office helper, or food preparation worker, based on her residual functional capacity.

## IV. **ANALYSIS**

Among other arguments, Plaintiff asserts that the ALJ erred by failing to explain how the "marked limitation" found "[w]ith regard to concentrating, persisting, or maintaining pace" (A.R. at 18) was integrated into the Plaintiff's RFC.  While the RFC does include an allowance for a maximum of 9% time off-task, Plaintiff argues that this relates only to a need for alternating between sitting and standing stemming from other

physical disabilities, and that the aforementioned marked limitation was not taken into account in the ALJ's opinion.  The Commissioner argues that the ALJ provided "generous" mental limitations in the RFC finding, and that the 9% maximum time off-task allowance accounts for Plaintiff's marked limitation.

Perhaps the ALJ arrived at her RFC determination based on the evidence cited by the Commissioner.  However, the Court cannot affirm on this basis.  The ALJ's written decision does not allow the Court to discern whether the ALJ took into consideration the "marked limitation" with concentration and pace in formulating the 9% total time off-task element of the RFC.  See Stockett v. Comm'r of Soc. Sec., 216 F. Supp. 3d 440, 456 (D.N.J. 2016) (Bumb, D.J.) ("The Third Circuit 'requires the ALJ to set forth the reasons for his decision.'") (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 123 (3d Cir. 2000)).  This is not merely harmless error.  The vocational expert in this case testified that "[t]en percent or more [time off-task], an individual would be unemployable at that point". (A.R. at 67)  Whether the ALJ took into account Plaintiff's "marked limitation" in formulating the RFC thus may affect the ultimate finding of disability.

It may well be the case that the ALJ will arrive at the same decision.  At this juncture, however, the ALJ must provide additional explanation for the decision.  As such, the Court

**vacates** the decision of the ALJ and **remands** for proceedings consistent with the above analysis.

**ACCORDINGLY**, it is on this **30th** day of **January 2020**,

**ORDERED** that the decision of the Administrative Law Judge is **VACATED** and the case is **REMANDED** for further proceedings consistent with this Memorandum Opinion; and it is further

**ORDERED** that the Clerk of Court shall **CLOSE THIS CASE**.

<pre>
                              s/Renée Marie Bumb
                              RENÉE MARIE BUMB
                              United States District Judge
</pre>